IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

RENAE E. JOHNSON,

               Plaintiff,

                                 Case No.: 6:11-cv-00044-TC

   v.

                                 FINDINGS AND RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.

COFFIN, Magistrate Judge:

     Plaintiff Renae Johnson seeks judicial review of the Social Security Commissioner's final

decision denying her application for supplemental social security income (SSI) under Title XVI of

the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g). For the following

reasons, I recommend that this Court reverse the Commissioner's decision and remand this case for

further proceedings.

Page 1 - FINDINGS AND RECOMMENDATION

## Background

Born in 1970, Johnson has a high school education and limited vocational training. (tr. 944-45). She has no past relevant work experience. Johnson alleges disability as of May 12, 2006, due to a back injury from an auto accident, fibromyalgia, a right hand tremor, a cognitive disorder, arthritis with radiculopathy, osteoporosis, weakness in right leg, depression, back fractures, and a somatoform disorder. (tr. 112, 1048, 1051).

On May 12, 2006, Johnson protectively filed an application for SSI. The claim was denied initially and upon reconsideration. A hearing was held before an administrative law judge (ALJ) on March 30, 2009. On June 17, 2009, the ALJ issued a decision finding Johnson not disabled. Johnson appealed the decision to the Appeals Council and submitted additional evidence. On December 7, 2010, the Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner. Subsequently, Johnson filed a complaint in this Court.

## Disability Analysis

The Commissioner engages in a sequential process of between one and five steps in determining whether an individual is disabled under the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Step one requires the ALJ to determine if the claimant is performing any gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(I). At step two, the ALJ determines if the claimant has a "severe medically determinable physical and mental impairment" that meets the twelve month duration requirement. Id. at § 404.1520(a)(4)(ii). If the claimant does not have such an impairment, she is not disabled. At step three, the ALJ determines whether the severe impairment (or a combination of impairments) meets or equals a "listed" impairment in the regulations. Id. at

Page 2 - FINDINGS AND RECOMMENDATION

404.1520(a)(4)(iii). If the ALJ determines the impairment (or combination of impairments) equals a listed impairment, then the claimant is disabled. If the adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular basis, despite the limitations imposed by her impairments. Id. at 404.1520(a)(4)(e). The ALJ uses this information to determine if the claimant can perform past relevant work at step four. Id. at 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. Id. at 404.1520(a)(4)(v); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

The claimant bears the initial burden of establishing disability. Tackett, 180 F.3d at 1098. If the analysis reaches the fifth step, the burden shifts to the Commissioner to show jobs within claimant's RFC exist in the national economy. Id. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g).

## The ALJ's Findings

At step one of the five step sequential evaluation process outlined above, the ALJ found that Johnson had not engaged in substantial gainful activity since the alleged onset date. (tr. 22). At step two, the ALJ found that Johnson had the following severe impairments: chronic neck pain, improved by cervical fusion in April 2006; chronic low back pain; a cognitive disorder; and an anxiety disorder. Id. At step three, the ALJ found that Johnson's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. (tr. 23).

Because Johnson did not establish disability at step three, the ALJ continued to evaluate how

Page 3 - FINDINGS AND RECOMMENDATION

Johnson's medical impairments affected her ability to work. The ALJ determined that Johnson could lift and/or carry up to 10 pounds frequently and 20 pounds occasionally. (tr. 24). The ALJ further found that Johnson should avoid concentrated exposure to vibrations or hazards and only occasionally reach overhead, bend, twist, crouch, or crawl. Id. In addition, the ALJ noted that Johnson's slight tremor in her dominant right hand would affect her ability to write. Id. The ALJ also noted that Johnson was limited to simple 1-2-3 step routine work with only occasional interaction with the public and coworkers. Id. Finally, the ALJ determined that Johnson must have the option to sit or stand at will. Id.

At step four, the ALJ found that Johnson was unable to perform her past relevant work. (tr. 29). At step five, the ALJ found that there are jobs that exist in significant numbers in the national and regional economies that Johnson could perform. Id. Based on these findings, the ALJ determined that Johnson was not disabled within the meaning of the Act and, accordingly, was not entitled to SSI benefits. (tr. 30).

## Standard

The court's review is limited to whether the Commissioner's decision to deny benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971) (quoting Consol. Edison Co. v.

N.L.R.B., 305 U.S. 197, 229 (1938)). The court must consider both evidence that supports and detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## Discussion

As a preliminary matter, it should be noted that the parties dispute whether new evidence submitted to the Appeals Council is properly before this Court. Additionally, Johnson argues that the ALJ erred by: (1) not finding somatoform disorder as a severe impairment at step two; (2) improperly discrediting her testimony; (3) not including all of her limitations in the RFC; (4) failing to properly assess the opinions of treating and examining doctors; and (5) erroneously rejecting third-party statements. (Pl.'s Opening Br. 12-20).

## I.   Preliminary Matter

Johnson asserts that a court can review the entire record, including evidence submitted to the Appeals Council after an ALJ hearing; as such, Johnson argues that the additional evidence that she submitted to, and that was reviewed by, the Appeals Council is properly before this Court. (Pl.'s Reply Br. 3). Conversely, the Commissioner contends that evidence submitted after the hearing should be excluded from this Court's consideration because Johnson did not show good cause for her untimely submission or that the new evidence is material, as required by 20 U.S.C. § 405(g).

Page 5 - FINDINGS AND RECOMMENDATION

(Def.'s Resp. 6-16).

A court "properly may consider ... additional materials [where] the Appeals Council addressed them in the context of denying [the claimant's] request for review." Harmon v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (citing Ramirez v. Shalala, 8 F.3d 1449 (9th Cir. 1993)).

Here, Johnson submitted evidence not before the ALJ to the Appeals Council, including medical records, a Mental Assessment from Dr. Peter LeBray, a Medicaid Approval Letter, MRI studies, a letter from Karen Campbell, MS, FNP, and third party letters from Evelyn Burbee and Phyllis Dean. (tr. 8). The Appeals Council added the new evidence to the record and discussed portions of this evidence in its denial of Johnson's request for review: "The Appeals Council observes that two additional medical source statements were submitted that describe [Johnson] as unable to sustain work activity due to your physical and mental impairments. Such evidence is duly considered." (tr. 6, 8).

Therefore, because the Appeals Council considered the additional evidence in denying Johnson's appeal, this Court will also consider such evidence.

## II.    **Step Two Findings**

Johnson asserts that the ALJ failed to include her somatoform disorder as a severe impairments at step two. (Pl.'s Opening Br. 12). She contends that this mental impairment increases her perception of pain; as a result, she alleges that it is hard for her to stand, sit, or focus for prolonged periods. (Pl's Reply Br. 6). The Commissioner contends that, if the ALJ should have considered Johnson's somatoform disorder at step two, such error was harmless because: (1) any limitations imposed by the somatoform disorder were considered at other steps; and (2) the error will not change the outcome of this case. The Commissioner, however, does not dispute that the ALJ

Page 6 - FINDINGS AND RECOMMENDATION

wholly failed to address Johnson's somatoform disorder in his decision. (Def.'s Resp. 16-18).

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments; step two findings must be based upon medical evidence. 20 C.F.R. § 416.920(a). An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities." 20 C.F.R. § 416.921(a). The step two inquiry is a "threshold inquiry." Yuckert, 482 U.S. at 153. As such, "[o]missions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." Harrison v. Astrue, 2011 WL 2619504, *7 (D.Or. July 1, 2011) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)).

The "effect of this harmless error doctrine is tempered by additional requirements," however, when a claimant asserts disability due to mental impairments. Id. In that case, the ALJ is required to "'document application of the [Psychiatric Review Technique] in the decision.'" Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011) (quoting 20 C.F.R. § 404.920a(e)); see also Dykstra v. Barnhart, 94 Fed.Appx. 449, 450 (9th Cir. 2004). This technique is reflected in a Psychiatric Review Technique Form ("PRTF"), wherein the reviewer must: 1) "determine whether an applicant has a medically determinable mental impairment"; 2) "rate the degree of functional limitation for four functional areas"; and 3) "determine the severity of the mental impairment (in part based on the degree of functional limitation)." Keyser, 648 F.3d at 725 (citing 20 C.F.R. § 404.1520a). Accordingly, the ALJ's written opinion must "incorporate the pertinent findings and conclusions based on the technique" and "include a specific finding as to the degree of limitation in each of the functional areas." Keyser, 648 F.3d at 725 (citations and internal quotations omitted).

Failure to document the application of the technique in the opinion "requires reversal if the [claimant] had a 'colorable claim of a mental impairment.'" Dykstra, 94 Fed.Appx. at 450 (citing

Page 7 - FINDINGS AND RECOMMENDATION

Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir.2000) (construing an earlier version of section 1520a)); see also Keyser, 648 F.3d at 726. A colorable claim "is one which is not 'wholly insubstantial, immaterial, or frivolous.'" Dykstra, 94 Fed.Appx. at 450 (quoting McBride Cotton & Cattle Corp. v. Veneman, 290 F.3d 973, 981 (9th Cir. 2002)); see also Keyser, 648 F.3d at 726-27.

Here, the ALJ did not mention Johnson's somatoform disorder in his decision, but he did consider Johnson's non-specific cognitive disorder and anxiety at step two. (tr. 22). A non-specific cognitive disorder, however, is not the same as a somatoform disorder; a non-specified cognitive disorder is a diagnosis of confusion or memory impairment, whereas a somatoform disorder is a diagnosis of a physical affliction from a psychological cause. See Herring v. Veterans Admin., 1996 WL 32147, *6 (9th Cir. Jan. 26, 1996) (Table) (a conversion disorder is a "form of a somatoform disorder - a psychiatric syndrome where the patient's symptoms suggest medical disease, but no demonstrable pathology accounts for the symptoms"); Crayton v. Bowen, 1989 WL 41721, *3 (9th Cir. Apr. 21, 1989) (Table) ("[s]omatoform disorders, including psychogenic pain disorder, 'present with physical symptoms suggesting a disease but for which no organic/physiologic disruption can be found,'" quoting a former version of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07); Dschaak v. Astrue, 2011 WL 4498832, *19-20 (D.Or. Aug. 15, 2011), adopted by 2011 WL 4498835 (D.Or. Sept. 25, 2011) (a cognitive disorder is a "direct physiological effect of a general medical condition" that results in cognitive impairments similar to dementia, delirium, or an amnestic disorder); Murphy v. Comm'r Soc. Sec. Admin., 423 Fed.Appx. 703, 704-05 (9th Cir. 2011) (somatoform disorder can, alone, be the basis of disability).

Thus, the limitations that the ALJ assessed in conjunction with Johnson's cognitive disorder are insufficient to address her somatoform disorder, as these medical entities are distinct. Further,

Page 8 - FINDINGS AND RECOMMENDATION

the ALJ's failure to consider Johnson's somatoform disorder was error warranting reversal, as Johnson has a colorable claim of mental impairment. Dr. Normy Chiou, Johnson's treating physician, opined that Johnson may be suffering from conversion disorder. (tr. 702). Accordingly, Dr. Chiou referred Johnson to Isabel Toledo-Silvestre, an evaluating Psychiatric and Mental Health Nurse Practitioner, who formally diagnosed Johnson with a conversion disorder. (tr. 700, 702). Thereafter, Dr. Chiou adopted Ms. Toledo-Silvestre's conversion disorder diagnosis and treated Johnson in accordance with that diagnosis. (tr. 691). Dr. Chiou later opined that Johnson's conversion disorder adversely impacted her ability to work. (tr. 677). In addition, James Powell, Psy.D., an examining psychologist, found that Johnson suffers from "extremely high levels of somatization," further corroborating Dr. Chiou's and Ms. Toledo-Silvestre's reports. (tr. 750).

The additional evidence submitted to the Appeals Council further supports Johnson's contention that she has a colorable claim of mental impairment due to her somatoform disorder. Ms. Campbell, Johnson's treating nurse practitioner,[1] also diagnosed Johnson with a pain disorder and "significant somatization." (tr. 930). Ms. Campbell's reports are persuasive due to the nature of her relationship with Johnson; initially, Ms. Campbell demonstrated caution regarding the severity of Johnson's condition. (tr. 27, 679). After a year of treating Johnson, however, Ms. Campbell had "gotten to know Johnson pretty well" and "found her to be entirely genuine," at which point Ms. Campbell opined that Johnson had "significant psychiatric problems," including a "pain disorder." (tr. 929-30). Ms. Campbell explained further that Johnson's somatic focus "has a tremendous

---

[1] Ms. Campbell became Johnson's treating medical professional after Dr. Chiou switched practices. At the time she opined about Johnson's pain disorder, Ms. Campbell had been treating Johnson for over a year. (tr. 929). Thus, although Ms. Campbell is a nurse practitioner, her opinion can be valued highly due to the nature of their treating relationship. SSR 06-03p, available at 2006 WL 2329939, *5.

influence on her perception of pain." (Tr. 930).

Therefore, the record reveals that the ALJ failed to follow 20 C.F.R. § 416.920a(e). Because Johnson has a colorable claim of mental impairment in regard to her somatoform disorder, such an error requires reversal. See Dykstra, 94 Fed. Appx. at 450. Further, the ALJ's failure to properly analyze this impairment may have resulted in errors at subsequent steps of the disability analysis. See 20 C.F.R. § 416.920 (listing five step evaluation process). The ALJ also utilized Johnson's subjective reports regarding her somatoform disorder, in part, as a means of discrediting her testimony. (tr. 26). As such, this Court is unable to determine whether substantial evidence supports the ALJ's credibility determination. On remand, the ALJ must evaluate Johnson's colorable claim of mental impairment using the procedures set out at 20 C.F.R. § 416.920a and must perform the subsequent steps of the analytical process, particularly readdressing Johnson's credibility, in light of the new evaluation. Accordingly, this Court need not address Johnson's other allegations of error.

### Conclusion

For the forgoing reasons, the Court should REVERSE the Commissioner's final decision and REMAND this matter for further proceedings consistent with this opinion.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Aalst, 951 F.2d 1153, 1156-57 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under

Page 10 - FINDINGS AND RECOMMENDATION

advisement when the response is due or filed, whichever date is earlier.

DATED this ___25th___ day of April 2012.

THOMAS M. COFFIN
United States Magistrate Judge